IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 26-58667-pwb |
| LIVING IT UP LLC, | CHAPTER:  7 |
| Debtor. | JUDGE:  PAUL W. BONAPFEL |
| CAPITAL FUND REIT, LLC, | CONTESTED MATTER |
| Movant, <br> v. | |
| LIVING IT UP LLC, Debtor <br> S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **Capital Fund REIT, LLC** has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion for Relief from the Automatic Stay** at 10:15 A.M., on August 19, 2026 in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees

to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: July 15, 2026

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 26-58667-pwb |
| LIVING IT UP LLC, | CHAPTER:  7 |
| Debtor. | JUDGE:  PAUL W. BONAPFEL |
| CAPITAL FUND REIT, LLC, | CONTESTED MATTER |
| Movant, | |
| v. | |
| LIVING IT UP LLC, Debtor
S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND REQUEST FOR**

**FINDING PURSUANT TO 11 USC SECTION 362 (d)(4)(B)**

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed, a copy of which is attached hereto and made a part hereof. Movant also prays that the Court find that this case was filed as part of a scheme to delay, hinder or defraud Movant that involves multiple bankruptcy cases affecting its property, as contemplated by 11 USC Section 362 (d)(4)(B).

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 6782 Mancha St, Atlanta, GA 30349.

3.      The Security Deed has been assigned to as evidenced by an assignment of record.

4.      As of the date of filing of this case by the Debtor, there have been three (3) previous bankruptcy case filed by the Debtor, affecting the subject real property as follows:

    a.  On October 2, 2025, Living It Up LLC ("Debtor") filed a prior voluntary petition under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court, for the Northern District of Georgia (Atlanta), and was assigned case No. 25-61372-pwb. Said case was subsequently dismissed on December 15, 2025, for *failure to appear at the Meeting of Creditors*, and subsequently terminated on January 12, 2026. (*See In re Living It Up LLC*, case no. 25-61372-pwb (**D.E**. **#21.**)).

    b.  On February 2, 2026, Living It Up LLC ("Debtor") filed a prior voluntary petition under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court, for the Northern District of Georgia (Atlanta), and was assigned case No. 26-51384-pwb. Said case was subsequently dismissed on February 19, 2026, for *failure to pay filing fee*, and subsequently terminated on March 18, 2026. (*See In re Living It Up LLC*, case no. 26-51384-pwb (**D.E**. **#12.**)).

    c.  On April 6, 2026, Living It Up LLC ("Debtor") filed a prior voluntary petition under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court, for the Northern District of Georgia (Atlanta), and was assigned case No. 26-54558-pwb. Said case was subsequently dismissed on April 23, 2026, for *failure to pay filing fee*, and subsequently terminated on June 3, 2026. (*See In re Living It Up LLC*, case no. 26-54558-pwb (**D.E**. **#10.**)).

5.      Collectively, Debtor has filed four (4) Chapter 7 cases in 1 year time span. The cases are consistently filed on the eve of foreclosure sales, and normally with filing deficiencies

and without counsel.

6.     All of Debtor's prior cases were dismissed without even holding a Meeting of Creditors.  The instant case has filing deficiencies which have not been cured as of the filing of this motion.

7.     Movant believes that the filing of these cases demonstrates a clear pattern of abuse and scheme to delay and hinder Creditor from being able to assert its rights in the Property, entitling Movant to relief and the finding pursuant to 11 USC Sections 362 (d)(4)(B).

8.     Debtor's lengthy filing history demonstrates that Debtor does not have the ability nor intention to propose and adhere to a feasible Chapter 13 Plan and make contractual payments. For this reason, the Court should lift the automatic stay and make the finding on templated by 11 USC Section 362(d)(4)(B).

9.     There is an extreme default in mortgage payments.

10.    Debtor is in default as the Loan matured on or about July 1, 2025, and the entire loan balance is all due and payable.

11.    The unpaid principal balance is $250,000.00, and interest is due thereon in accordance with the Promissory Note. Movant's total claim is approximately $405,249.39.

12.    Upon information and belief, the value of the Property is approximately $333,700.00 according to the Fulton County Tax Assessor.

13.    Because there may be little or no value in the property over the amount owed on the property, Movant is not adequately protected and should be permitted to proceed with foreclosure.

14.    Because there may be little or no equity in the property which could benefit the estate, the Trustee's interest should be abandoned.

15.     Movant shows that the provisions of Bankruptcy Rule 4001(a)(4) should be waived.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes.  Movant further prays that the Court find that this case was filed as part of a scheme to delay, hinder or defraud Movant that involved multiple bankruptcy cases affecting the property, as contemplated by 11 USC Section 362(d)(4)(B). Movant also prays that the provisions of Bankruptcy Rule 4001(a)(4) be waived, for reasonable attorney's fees, and for such other and further relief as is just and equitable.

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

LIVING IT UP LLC,

Debtor.

Case No. 26-58667-PWB

Chapter 7

**CERTIFICATE OF SERVICE**

This is to certify that on this day I electronically filed the foregoing **Notice of Hearing and Motion for Relief from the Automatic Stay** the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

**The following parties have been served via e-mail**:

S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Living It Up LLC
6782 Mancha St
Atlanta, GA 30349

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Eric Smith, Bar No.: 347001
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: esmith@aldridgepite.com

# PROMISSORY NOTE

(Installment Payments)

LOAN NUMBER: ███                                      DATE: 07/05/2024
AMOUNT:          $250,000.00
PROPERTY:        6782 Mancha St,
                 Atlanta, GA 30349

FOR VALUE RECEIVED, the undersigned **Living It Up LLC, a Georgia limited liability company,** ("Borrower"), promises to pay without offset or deduction to the order of **Capital Fund I, LLC, an Arizona Limited Liability Company**, their successor and assigns ("Lender"), located at 14555 N Scottsdale Road Suite #200 Scottsdale, AZ 85254, or at any other place designated by Lender, the principal sum of **two hundred and fifty thousand dollars and zero cents ($250,000.00)**, together with interest on the unpaid principal balance from the date the proceeds have been distributed to or on behalf of Borrower until the entire outstanding principal balance has been paid in full at the full rate of **11.99%** per annum ("Annual Rate"), and any other amounts payable by Borrower to Lender under the Loan Documents, as defined herein.

Interest shall be charged on unpaid principal until the full amount of principal has been paid. Borrower shall make no less than interest only payments every month. Borrower shall prepay the first pro-rata payment at the closing indicated on the Final Settlement Statement. Borrower shall pay the monthly payments thereafter on 1ˢᵗ day of each month beginning **09/01/2024**. The interest only full monthly payment will be in the amount of U.S. **$2,497.92**. Interest on the outstanding principal balance shall be calculated on a daily basis (based on a three-hundred and sixty (360) day year). If any installment payment shall become due on a day that is not a business day, then the payment shall be deemed due on the next day which is a business day. The term "business day" shall mean any day which is not Saturday, Sunday or federally observed holiday.

This amount may change if further principal is advanced and/or the Borrower pays principal payments. Interest shall be charged on that part of Principal which has been advanced. In the event the loan is not funded to the maximum Note amount, the monthly payment will be the amount as determined by Lender to be an interest only payment on the outstanding funds advanced. In the event an advance is made on any date other than the effective date of this Note, the Borrower agrees to pay pro-rated interest on those advances giving the Lender full credit for interest earned on the advance for the portion of the month the advance was made.

Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments") in consecutive equal monthly installments, continuing on the same date of each and every successive calendar month (the "Payment Due Date"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be an Event of Default under this Note and the Loan Documents. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner
**MONTHLY PAYMENT: $2,497.92**

The entire principal balance together with all accrued and unpaid interest, and all other obligations of Borrower under this Note, if not sooner paid, shall be due and payable in full on **07/01/2025** ("Maturity Date"). All payments under this Note and under the Loan Documents (as below defined shall be in lawful money of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

1.      **PREPAYMENT.** Borrower may repay this Note in whole at any time. Borrower shall also have the right to make without penalty, principal reduction payments during the period of this Note from time to time. Interest calculation shall be made on the basis of total funds advanced, less any and all repayment of principal made by

PROMISSORY NOTE
Page 1 of 6



Loan ███                                                              INITIALS

Borrower. All prepayments shall include payment of all accrued and unpaid interest to the date of such prepayment on the amount of principal being prepaid.

**1.   EXTENSION.** At the request of Borrower, and at the sole discretion of Lender, this Note may be extended for a period of six (6) months (the "Extension"), provided that Borrower completes the full extension process as requested by Lender and pays a loan extension fee of **$2,700.00**. In the event the loan is paid off after the Maturity Date and no request for a loan extension is made by Borrower, the full extension fee shall apply. In the event the extension is granted, Lender reserves the right to increase the Annual Rate by an amount equal to that which the Wall Street Journal Prime Rate has increased (as of the first day of the extension period), and the payment amount shall adjust accordingly. The following are requirements for an Extension to be granted:

**1.1**   Loan payments, fees, and charges must be current;

**1.2**   The Property must be current on county taxes and have full insurance coverage;

**1.3**   If improvements were to be made to the Property those must have been completed or have significant progress, shown to Lender by updated photos of the Property;

**1.4**   The current loan to value of the Property must not exceed 70%; and

**1.5**   Borrower must complete full process before reaching the end of the month of maturity to avoid default.

**2.   LATE CHARGE.** Borrower hereby acknowledges and agrees that any late payment by Borrower to Lender will cause additional expense not contemplated hereby in serving the Loan Documents and will result in losses to Lender of the use of the money due, disruption, additional administrative expenses in handling and processing delinquent payments. Accordingly, Borrower will pay as damages, a late charge for each monthly payment that is not actually received by Lender or the Account Servicing Agent within ten (10) days after the Payment Due Date.

Such late charge shall be equal to ten percent (10%), or $100, whichever is greater, of the interest only payment at the then current interest rate and Borrower hereby agrees that such late charge is a reasonable estimate of Lender's damages. This late charge shall be in addition to and separate from any increase in the interest rate herein set forth. The late charge shall apply individually to all payments past due, there will be no daily adjustment, and the late charge shall be used to defray the cost of the Lender incident to collecting such late payment. The late charge is due and payable in addition to and together with the delinquent installment. Further, Borrower agrees not to remit late payments without the inclusion of the late charge. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lender will incur by reason of a late payment.

**3.   WAIVER.** Acceptance by Lender of any installment payment that does not include the late charge shall not be a waiver of the right to collect the late charge unless said waiver is memorialized in a writing signed by Lender. Borrower acknowledges he/she has no right to insist on strict performance by notice. This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights the Lender may have to collect any other amounts provided to or otherwise prevent Lender from exercising any of the other rights and remedies granted hereunder or available at law or in equity.

**4.   DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**4.1**   Payment Default. If any installment under this Note is not actually received by the end of the month of the Payment Due Date, or if all principal, interest and any other amounts due hereunder are not fully paid on or before the Maturity Date; 07/01/2025

**4.2**   Performance Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the Loan Documents, or to comply with or to perform any term, obligation covenant or condition contained in any other agreement between Lender and Borrower.

**4.3**   False Statements. Any warranty, representation or statement made or furnished to Lender, to Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**4.4**   Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**4.5**   Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety or accommodation parties dies or becomes incompetent, or revokes or disputes the validity of, or liability under any guaranty of the indebtedness evidenced by this Note.

PROMISSORY NOTE
Page 2 of 6

INITIALS

Loan ███

**4.6.** **Failure to Insure.** The failure of Borrower to acquire and maintain property insurance; and to pay all obligations, premiums and other amounts owing in respect to the ownership, operation, occupancy or use of the Property and all agreements, documents and instruments relating to the Property.

**4.7** Default of Related Third Parties. In the event that this Note or any of Borrower's other loans may Default, all other loans for this Borrower will be considered in Default at the option of the Lender. The term "Borrower" under this agreement shall include all partnerships, LLCs, corporations or any other entity of which Borrower owns, controls or is affiliated with Borrower or any principals of Borrower. Borrower acknowledges that each of the Borrower's entities (above) that has received, is receiving or may receive in the future, one or more loans from Lender (collectively "Loans"), as evidenced by Loan Documents; and that each of Borrower's entities agrees that, if a default (either monetary or non-monetary) occurs under any of the Loan Documents or any of Borrower's entities, such a default shall be deemed a default under all other Loan Documents for all entities. In the event of such a default, Lender shall have the right to exercise all remedies under the Loan Documents for all loans, including but not limited to, the right to call all of Borrower's loans due and payable.

**4.8** Mechanics Liens. In the event a mechanics lien is recorded against the Property, Lender shall have the right to exercise all remedies under the Loan Documents, including but not limited to, the right to call the Note due and payable.

**4.9** Lawsuits. In the event the Lender is named in a lawsuit that the Borrower is a party to, Lender shall have the right to exercise all remedies under the Loan Documents for all loans, including but not limited to, the right to call all of Borrower's loans due and payable

**5.** **DEFAULT RATE.** In the event of Default due to nonpayment of principal or interest provided for herein, then, in that event, and in addition to any and all provisions hereof, each and every such delinquent payment along with the entire principal balance and accrued interest, shall bear interest to the extent permitted by law at the rate which is equal to twenty-nine percent (29%) per annum (the "Default Rate of Interest") from the date on which the interest started accruing and payable until the delinquent payment is received by Lender or the Account Servicing Agent. If such Default Rate of Interest may not be collected from Borrower under applicable law, then this Note shall bear interest at the maximum increased rate of interest, if any, which may be collected from Borrower under applicable law.

If a Borrower sells a Property when any of the Loan Documents for any of the Borrower entities are in default, the payoff statement from Lender for the Loan associated with such Property shall include all amounts owing on any or all of the Loans as of such date, including without limitation, the following: late payment fees, legal fees, trustee fees, default interest, past-due payments, and principal. Such amounts shall be paid directly from escrow, without notice to, or escrow instructions from, Borrower. Amounts paid shall be applied first to outstanding fees, then to accrued interest, and finally to principal. Lender may apply such payments to the respective Loans in Lender's sole and absolute discretion. Borrower acknowledges that this Agreement is made in partial consideration for the Loans, and that Lender would not agree to make the Loans without execution of this Agreement.

**6.** **LENDER RIGHTS.** Upon an Event of Default, the whole sum of principal and interest shall become immediately due and payable, accelerated, at the option of the Lender, without notice, with interest on the entire unpaid principal balance and accrued interest from the date the payment was due. Lender may exercise this option to accelerate, without notice, during any default by Borrower regardless of any prior forbearance. No failure to exercise or delay in exercising such options shall constitute a waiver of such option in the event of any subsequent Default hereunder.

Further, upon an Event of Default, Lender may resort to any collateral, whether real property or personal property, now or hereinafter given as security for this Note, in any order, and may sell and dispose of such collateral in whole or in part, at any time or from time to time with no requirement on the party of the Lender of this Note to marshal assets. Lender shall not be required to preserve any rights in such collateral as against prior parties. Lender is entitled to the benefits of any and all Loan Documents securing or guaranteeing this Note.

**7.** **ACCOUNTING.** All payments or partial payments shall be credited first to any collection costs, attorney's fees, beneficiary advances and any other amounts due under the terms of the Loan Documents; next to any accrued and unpaid late charges; then to default interest; then to regular interest and then to a reserve until otherwise directed by Borrower.

**8.** **LOAN DOCUMENTS.** The Deed to Secure Debt and Assignments of Rents, any Fixture Filing, Security Agreement or any other instruments evidencing, governing or securing Borrower's obligation under this Note are collectively referred herein to as "Loan Documents."

Loan

 **INITIALS**

**9.** **TIME IS OF THE ESSENCE** with regard to each and every term, condition and obligation in the Loan Documents as to which time is a factor.

**10.** **ATTORNEY'S FEES.** In the event of any Default in the payment of this Note, and if the same is referred to any attorney for collection or any action at law or in equity is brought with respect hereto, Borrower shall pay all of Lender's expenses and costs including but not limited to: attorney's fees, whether suit is instituted or not. In the event suit is instituted, all court costs and attorney's fees shall be set by the Court and not by jury and the amount of such an award shall be included in any judgment obtained by the Lender and shall be secured by the Loan Documents.

**11.** **JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**12.** **GOVERNING LAW.** This Note will be governed by the laws of the State of Arizona without regard to its conflict of law's provisions.

**13.** **USURY.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note, or the Loan Documents, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

**14.** **GENERAL PROVISIONS.** This Note benefits the Lender and its successors and assigns, and binds the Borrower and Borrower's heirs, successors, assigns and representatives. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

Borrower and all endorsers and guarantors hereof jointly and severally agree with Lender that Lender may, from time to time, extend the time for payment of the outstanding principal balance or any part thereof, reduce the payments thereon, release anyone liable on any amount of the outstanding principal balance, accept a renewal of this Note, modify the terms and time of payment of the outstanding balance, join in an extension or subordination agreement, release of any security given thereof, take or release other or additional security, modify the rate of interest or period of amortization of this Note or change the amount of the monthly installments payable hereunder, without notice, in such a manner as Lender may see fit, all without affecting or releasing the liability of Borrower and all endorser(s) and guarantors hereof.

All makers, sureties, guarantors and endorser(s) hereof, severally waive demand, diligence, presentment for payment, protest and demand, and notice of extension, dishonor, protest and nonpayment of this Note, and waive any and all lack of due diligence or delays in collection or enforcement hereof. This Note shall be the joint and several obligations of all makers, sureties, guarantors, and endorser(s); and shall be binding upon them and their successors and assigns. All makers, sureties, guarantors, and endorser(s); hereof, severally waive any homestead or exemption right pursuant to the Loan Documents.

**15.** This Note is secured by a Deed to Secure Debt and Assignment of Rents of even date herewith, securing real property located in «County» County, Georgia (the "Property"). The Deed to Secure Debt contains a provision for acceleration of the maturity of this Note.

**THE BORROWER OF THIS NOTE CERTIFIES THAT HE/SHE IS UNABLE TO OBTAIN CONVENTIONAL LOAN FINANCING; AND THAT THE INDEBTEDNESS EVIDENCED BY THIS NOTE IS OBTAINED FOR BUSINESS AND COMMERCIAL PURPOSES; AND THAT THE PROCEEDS THEREOF WILL NOT BE USED PRIMARILY FOR PERSONAL, FAMILY, HOUSEHOLD OR AGRICULTURAL PURPOSES.**

**PRIOR TO SIGNING THIS NOTE, BORROWER HAS READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

THIS AGREEMENT MAY BE EXECUTED IN COUNTER-PARTS.

Loan ▮▮▮▮

PROMISSORY NOTE
Page 4 of 6

 INITIALS

[SIGNATURES FOLLOW]



PROMISSORY NOTE
Page **5** of **6**

Loan

IN WITNESS WHEREOF, Borrower has executed and delivered this Promissory Note as of the date written below.

**AGREED AND ACCEPTED 07/05/2024**

Signature: _____

Living It Up LLC, a Georgia limited liability company
BY: Marcedes Lyons, Its Member

Personally Guaranteed By: _____
Marcedes Lyons

PROMISSORY NOTE
Page **6** of **6**

INITIALS

Loan

Raymond Law Group
5775 Glenridge Drive NE
Bldg D  Suite 150
Atlanta Georgia 30328
█████████████████

Filed and Recorded 08/13/2024 08:00:00 PM
2024-0207362
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 7745491891
0466245412

---

**[SPACE ABOVE RESERVED FOR RECORDER'S USE]**

## COVER SHEET TO DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

**Date of Instrument:**  07/05/2024

**Signatories to Instrument:**  Marcedes Lyons Its Member of Living It Up LLC, a Georgia limited liability company

**Grantee's Mailing Address:**         Capital Fund I, LLC
                                        14555 North Scottsdale Road, Suite 200
                                        Scottsdale, Arizona 85254

**Map and Parcel ID Number:**          130156LL3745
**Original Loan Amount:** ·            $250,000.00

**Initial Maturity Date:**             07/01/2025

**Intangible Recording Tax:**          EXEMPT

**Citation to Intangible Recording Tax Exemption Authority (If Applicable):**

NOTE: THIS COVER SHEET DOES NOT MODIFY THE TERMS OF THE ATTACHED INSTRUMENT.

Raymer Law Group
5775 Glenridge Drive NE
Bldg D  Suite 150
Atlanta Georgia 30328
2024050512

**RECORDING REQUESTED BY:**

Metro Title Trust

WHEN RECORDED, RETURN TO:
postclosing@capitalfund1.com

ATTN:
Capital Fund I, LLC
14555 North Scottsdale Road, Suite 200
Scottsdale, Arizona 85254

Loan No. ▮
Property ID No. ▮

NOTE TO CLERK OF COURT: THIS DEED TO SECURE DEBT SECURES A NOTE IN THE AMOUNT OF $250,000.00 PAYABLE ON 07/01/2025, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE GEORGIA COMMERCIAL CODE AND IS TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS UNDER THE NAMES OF BORROWER, AS "DEBTOR" AND LENDER, AS "SECURED PARTY." A FURTHER STATEMENT RELATED TO THIS FIXTURE FILING IS CONTAINED IN THE NON-UNIFORM COVENANTS HEREOF.

THIS IS A FIRST POSITION DEED TO SECURE DEBT AND RESTRICTIONS HEREIN PROHIBIT ANY FURTHER ENCUMBERANCE OF THE PROPERTY WITHOUT LENDER'S WRITTEN CONSENT AND APPROVAL. THIS DEED TO SECURE DEBT ALSO CONTAINS A DUE ON SALE CLAUSE.

## DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

| | |
|---|---|
| **GRANTOR:** | **Living It Up LLC, a Georgia limited liability company, ("Borrower")** |
| Address: | 5574 WINDWOOD RD<br>Atlanta GA 30349 |
| **GRANTEE:** | **Capital Fund I, LLC**<br>**An Arizona Limited Liability Company ("Lender")** |
| Address: | 14555 N Scottsdale Road Suite #200<br>Scottsdale, AZ 85254 |

PROPERTY in Fulton County, State of Georgia, described as:

All that tract or parcel of land lying and being in Land Lot 156, 13th District, Fulton County, Georgia and being,,Lot 249, Block, Heritage Park Subdivision (AKA Old National Highway), Phase Two, as per plat recorded at,,Plat Book 311, Page 62, Fulton County, Georgia Records, which plat is incorporated herein and made a part,,hereof by this reference.,,Subject to that Flood Plain Indemnification in favor of Fulton County, dated September 16, 2003, and recorded,,in Deed Book 36864, Page 208, Fulton County, Georgia Records.
130156LL3745
Street Address: <u>6782 Mancha St, Atlanta GA 30349</u>

**This Deed to Secure Debt and Assignment of Rents ("Security Instrument")**, made on the above date between the Grantor and Grantee above named,

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS
Page **2** of **12**



Loan ▮                                                                          INITIALS

**WITNESSETH THAT** Borrower does hereby irrevocably and unconditionally mortgage, grant, warrant, convey, bargain, sell, transfer, and assign to and for the benefit of Lender, with power of sale and right of entry and possession, the above-described real property;

**TOGETHER WITH** all the improvements now or hereafter erected on the Property, and all easements, appurtenances and fixtures now or hereafter a part of the Property, and all rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Lender to collect and apply such rents, issues and profits. All replacements and additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**FOR THE PURPOSE OF SECURING:**

1.   · Performance of each and every agreement of Borrower herein contained.
1.   Payment of the principal sum of <u>two hundred and fifty thousand dollars and zero cents</u> (U.S $250,000.00). This debt is evidenced by Borrower's NOTE or NOTES dated the same date as this SECURITY INSTRUMENT, and any extension or renewal thereof, (collectively, if applicable, the "Note").
2.   Payment of additional sums and interest thereon, which may be loaned or paid on behalf of Borrower or Property, or its successors or assigns, and when evidenced by a writing they are secured by this Security Instrument.

**COVENANTS. Borrower and Lender covenant and agree as follows:**

1.   Borrower has the right to grant and convey the Property under this Security Instrument, and that Property is unencumbered, except for encumbrances of record as of the date of this Security Instrument. Borrower warrants and will defend the title to the Property against all claims and demands, subject to any encumbrances of record as of the date of this Security Instrument.

2.   Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
     If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.
     Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Unless applicable law provides otherwise, all payments received by Lender under Paragraph 2 shall be applied first in payment of any costs or charges, then to Default Interest (as defined in the Note) accrued, then to interest accrued, and then to reduce principal.

4.   Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4. Borrower shall promptly furnish to Lender receipts evidencing the payments.

5.   Borrower shall promptly discharge any lien that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien, which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more actions set forth above within 10 days of the date of the notice.

6.   Borrower shall keep the Property in good condition and repair; not remove or demolish any building thereon unless part of the construction plan approved in writing by Lender; complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed on the Property and pay when due all claims for labor performed and materials furnished on the Property; comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; cultivate, irrigate, fertilize, fumigate, prune and do all

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS
Loan███████                      Page 3 of 12                                                    **INITIALS**

other acts which from the character or use of said Property may be reasonably necessary, the specific enumerations herein not excluding the general.

**7.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance and general liability insurance on the Property satisfactory to and with loss payable to Lender. Proof of said insurance must be provided to Lender by Borrower within two (2) business days of signed Note secured by this Security Instrument. Failure to provide proof of insurance will result in immediate default hereunder. Upon any such default, Lender shall have the right, at its election, to purchase said insurance for Property, and charge all costs to the principal balance of the Note which will accrue interest at the same rate set forth as default interest in the Note.

The amount collected under any fire or other insurance policy shall be applied to any indebtedness secured hereby and in such order as Lender may determine. Such applications or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**8.** Borrower shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear.

**9.** Borrower shall pay immediately and without demand all sums expended by Lender pursuant to the provisions hereof, with interest from date of expenditure, at the rate of interest found on the Note.

**10.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do or allow anyone else to do anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small immaterial quantities of Hazardous Substances that are generally recognized to be appropriate to normal cleaning and maintenance purposes of a residential property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory authority or private party involving the Property or any violation of any Hazardous Substance or Environmental Law of which Borrower has actual or constructive knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removable or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall, at its sole cost, promptly take all necessary remedial actions in accordance with Environmental Law. As used in this paragraph 10, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides or herbicides, volatile solvents, materials containing asbestos, formaldehyde or dioxins, and radioactive materials. As used in this Paragraph 10, "Environmental Law" means all federal laws and laws of the state, county and city of the jurisdiction where the Property is located that relates to health, safety or environmental protection.

**11.** Should Borrower fail to make any payment or to do any act as herein provided, the Lender, but without obligation to do so, and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Lender being authorized to enter upon the Property for such purposes; (b) appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender; (c) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and (d) in exercising any such powers, or in enforcing this Security Instrument by foreclosure, pay necessary expenses, employ counsel and pay his reasonable fees. Any amounts disbursed by Lender under this Paragraph 11 shall become additional debt of Borrower's, secured by this Security Instrument unless Borrower and Lender agree to terms of payment, these amounts shall be payable, with interest, upon demand from Lender to Borrower.

**12.** This Security Instrument is not a residential mortgage loan as defined under 15 USC § 1602 (cc) (5). This Security Instrument is for non-occupancy only. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property. Borrower, its agents, shareholders, members or managers shall not occupy this home for the purpose of a primary residence at any time. Occupancy by the Borrower, its agents, shareholders, members or managers shall create a default under this Security Instrument and Lender may require immediate payment in full of all sums secured by this Security Instrument.

**13.** As used in this Section 13, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS
Page 4 of 12

 **INITIALS**

Loan ████

deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

14.    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

15.    BORROWER UNDERSTANDS AND AGREES THAT THE LIEN AND ENCUMBRANCE CREATED BY THE SECURITY INSTRUMENT SHALL CONSTITUTE A FIRST PRIORITY LIEN AGAINST THE PROPERTY NOTWITHSTANDING THE FACT THAT THE DEED GRANTING FEE TITLE OWNERSHIP TO THE BORROWER WILL BE RECORDED SUBSEQUENT TO THE RECORDATION OF THIS SECURITY INSTRUMENT IN ACCORDANCE WITH THE AFTER-ACQUIRED TITLE DOCTRINE AS CODIFIED UNDER THE PROVISIONS OF ARS 33-806(A) AND THAT THIS SECURITY INSTRUMENT IS BEING RECORDED TO IMPART ACTUAL AND/OR CONSTRUCTIVE NOTICE THAT IT IS THE UNIFIED AND IRREVOCABLE INTENT OF THE BORROWER AND LENDER THAT THE RECORDATION OF THE SECURITY INSTRUMENT SHALL BE SUFFICIENT TO ESTABLISH THAT THE INDEBTEDNESS EVIDENCED HEREBY CONSTITUTES A FIRST PRIORITY LIEN AND ENCUMBRANCE AGAINST BORROWER'S INTEREST IN THE PROPERTY AS OF THE DATE HEREOF NOTWITHSTANDING THE FACT THAT THE CONVEYANCE OF THE PROPERTY TO BORROWER MAY NOT YET HAVE OCCURRED AND/OR THAT THE DEED EVIDENCING THE CONVEYANCE OF THE PROPERTY TO THE BORROWER HAS NOT YET BEEN RECORDED.

16.    Any award of damages in connection with any condemnation for public use of or injury to said Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

17.    TIME IS OF THE ESSENCE IN EACH COVENANT OF THIS SECURITY INSTRUMENT; and that by accepting payment of any sums secured hereby after its due date, Lender does not waive its right either to require prompt payment when due of all other sums or to declare default for failure to pay.

18.    That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority, for so long as any amounts are owed by Borrower to Lender, to collect the rents, issues and profits of the Property, reserving to Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such Property income, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such Property income, rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of sale hereunder or invalidate any act done pursuant to said notice.

19.    The failure of Borrower to comply with the terms of the Note or Security Instrument, which secures the Note shall constitute and immediate default hereunder, and also an immediate default as to all other notes and security instruments between the parties. Upon any such default, Lender shall have the right, at its election, to accelerate immediately the Note, and proceed to enforce all of Lender's rights, in accordance with Georgia law, including without limitation, the right to foreclose any or all of the security instruments and pursue a deficiency judgment(s), and pursue the Guarantors together or separately on contract.

20.    If an Event of Default (as defined in the Note) has occurred and is continuing, Lender, at its option, may declare the indebtedness to be immediately due and payable without further demand, and may either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy 20.1.1 to enforce payment of the Loan; 20.1.2 to foreclose this Security Instrument judicially or non-judicially by the power of sale granted herein; 20.1.3 to enforce or exercise any right under any loan document; and 20.1.4 to pursue any one (1) or more other remedies provided in this Security Instrument or in any other loan document or otherwise afforded by applicable law. Each right and remedy provided in this Security Instrument or any other loan document is distinct from all other rights or remedies under this Security Instrument or any other loan document or otherwise afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Borrower has the right to bring an action to assert the nonexistence of an Event of Default or any other defense of Borrower to acceleration and sale.

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

Loan ███████    Page 5 of 12    INITIALS

**20.1**      Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised or directed by Lender without prior judicial hearing and hereby appoints Lender as Borrower's agent and attorney-in-fact to exercise such power of sale in the name and on behalf of Borrower.  In the event Lender invokes the power of sale:

**20.1.1.**  Borrower hereby authorizes and empowers Lender to take possession of the Property, or any part thereof, and hereby grants to Lender a power of sale and authorizes and empowers Lender to sell (or, in the case of the default of any purchaser, to resell) the Property or any part thereof, in compliance with applicable law, including compliance with any and all notice and timing requirements for such sale;

**20.1.2.**  Lender may sell and dispose of the Property at public auction with 30 days' notice of the sale to Borrower, at the usual place and time for conducting sales at the courthouse in the county where all or any part of the Property is located, to the highest bidder for cash, first advertising date, terms and place of such sale by publishing a notice of sale once a week for four (4) consecutive weeks (without regard to the actual number of days) in a newspaper in which serves as the official publication of legal notices and advertisements in such county, all other notice being waived by Borrower; and Lender may thereupon execute and deliver to the purchaser a sufficient instrument of conveyance of the Property, which may contain recitals as to the happening of the Event of Default upon which the execution of the power of sale granted by this Section depends.  The recitals in the instrument of conveyance shall be presumptive evidence that Lender duly complied with all preliminary acts prerequisite to the sale and instrument of conveyance.  Borrower constitutes and appoints Lender as Borrower's agent and attorney-in-fact to make such recitals, sale and conveyance;

**20.1.3.**  the power and agency granted in this Section are coupled with an interest, are irrevocable by death or otherwise, and are in addition to the remedies for collection of the indebtedness as provided by law.  Borrower ratifies all of Lender's acts, as such attorney-in-fact, and Borrower agrees that such recitals shall be binding and conclusive upon Borrower and that the conveyance to be made by Lender (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtsey, and all other exemptions of Borrower, or its successors in interest, in and to the Property;

**20.1.4.**  the Property may be sold in one (1) parcel and as an entirety, or in such parcels, manner or order as Lender, in its discretion, may elect, and one (1) or more exercises of the powers granted in this Section shall not extinguish or exhaust the power unless the entire Property is sold or the indebtedness is paid in full, and Lender shall collect the proceeds of such sale, applying such proceeds as provided in this Section.  In the event of a deficiency, Borrower shall immediately on written demand from Lender pay such deficiency to Lender, subject to the provisions of the Note limiting Borrower's personal liability for payment of the indebtedness.  Borrower waives all rights, claims, and defenses with respect to Lender's ability to obtain a deficiency judgment.  Borrower acknowledges that Lender may bid for and purchase the Property at any foreclosure sale and shall be entitled to apply all or any part of the indebtedness as a credit to the purchase price.

**20.1.5.**  If the Property is sold pursuant to this Section, Borrower, or any person holding possession of the Property through Borrower, shall surrender possession of the Property to the purchaser at such sale on demand.  If possession is not surrendered on demand, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Georgia and Georgia law.

**20.2**      Borrower covenants and agrees that Lender shall apply the proceeds of any sale in the following order:

**20.2.1.**  to all reasonable costs and expenses of the sale, including reasonable attorneys' fees actually incurred and costs associated with title evidence and the reasonable cost of such other professionals who provided services in connection with the sale or establishing a deficiency, if any;

**20.2.2.**  to the indebtedness in such order as Lender, in Lender's discretion, directs; and

**20.2.3.**  the excess, if any, to the person or persons legally entitled to the excess.

**20.3**      In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other loan document, there shall be allowed and included as indebtedness:  (a) all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees actually incurred, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; (b) all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the loan documents; and (c) costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the loan documents) of procuring all abstracts of title, title searches and

examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the loan documents. All expenditures and expenses of the nature mentioned in this Section and such other expenses and fees as may be incurred in the protection of the Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other loan documents, or the Property, including bankruptcy proceedings, any foreclosure, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

20.4    Any action taken by Lender pursuant to the provisions of this Section shall comply with the laws of the Property Jurisdiction. Such applicable laws shall take precedence over the provisions of this Section, but shall not invalidate or render unenforceable any other provision of any loan document that can be construed in a manner consistent with any applicable law. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession) or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any applicable law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such applicable law to the full extent permitted by law.

21.    Following an Event of Default, the Lender shall be entitled to have a receiver appointed, ex parte, by a court over the Property, without notice and without regard for the adequacy of the security for the indebtedness and without regard for the solvency of the Borrower, of any person, firm or other entity liable for the payment of the Indebtedness, and thereupon the receiver may (a) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (b) complete any construction on the Property in such manner and form as Lender deems advisable; (c) make alterations, additions, renewals, replacements and improvements to or on the Property; (d) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify leases, obtain and evict tenants, and demand, sue for, collect and receive all rents; and (e) apply the receipts from the Property to the payment of indebtedness, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Property, as well as just and reasonable compensation for the services of the receiver, its counsel, agents and employees. In the event this Section is inconsistent with any other provision of the Security Instrument, this Section shall supersede any other provisions.

21.1    BY EXECUTION OF THIS SECURITY INSTRUMENT, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF LENDER TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PROPERTY BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY INSTRUMENT IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

BORROWER'S INITIALS _____ _____

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

INITIALS

Loan [redacted]

Page 7 of 12

**21.2**    It is the intention of Borrower and Lender to grant a perpetual or indefinite security interest in the Property pursuant to O.C.G.A. § 44-14-80 and to agree that title shall not revert to Borrower until the expiration of the later of (i) seven years from the maturity date of the Secured Indebtedness or (ii) 20 years from the date hereof. However, nothing in this paragraph will impair Lender's rights to collection of the Secured Indebtedness and foreclosure of the security interest if the Secured Indebtedness is not repaid when due.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs unless Georgia law provides otherwise.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Georgia law.

**21.3**    To the fullest extent permitted by law, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any present or future law providing for any appraisement, valuation, stay, extension or redemption, homestead, moratorium, reinstatement, marshaling or forbearance, and Borrower, for Borrower, Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the fullest extent permitted by law, waives and releases all rights of redemption, valuation, appraisement, stay of execution, reinstatement (including all rights under O.C.G.A. Section 44-14-85), notice of intention to mature or declare due the whole of the indebtedness, and all rights to a marshaling of assets of Borrower, including the Property.

**21.4**    This Security Instrument secures future advances.

**21.5**    This conveyance is intended to and shall constitute and be construed as (1) a deed passing fee title to the Property to Lender, and is made under those provisions of the existing laws of the State of Georgia (O.C.G.A. Section 44-14-60 et seq.) relating to conveyances and deeds to secure debt (a/k/a "security deed"), and not a mortgage, and is given to secure the payment and performance of the indebtedness, and (2) a security agreement pursuant to the provisions of the Uniform Commercial Code of Georgia, Title 11 of the Official Code of Georgia.

**21.6**    Lender's acceptance, if any, of an assumption of the obligations of this Security Instrument and the Note, and the release of Borrower pursuant to the loan documents, shall not constitute a novation and shall not affect the priority of the lien created by this Security Instrument.

**21.7**    Borrower represents and warrants to Lender that neither all nor any part of the Property is to be used as a dwelling place by Borrower at the time this Security Instrument is entered into; however, the notice requirements of O.C.G.A. Section 44-14-162.2 shall be applicable to any exercise of the power of sale contained in this Security Instrument.

**21.8**    The interest of Lender under this Security Instrument and the liability and obligation of Borrower for the indebtedness arise from a "commercial transaction" within the meaning of O.C.G.A. Section 44-14-260(1). Accordingly, pursuant to O.C.G.A. Section 44-14-263, Borrower waives any and all rights which Borrower may have to notice (other than as may be expressly provided for herein) prior to seizure by Lender of any interest in personal property of Borrower which constitutes part of the Property, whether such seizure is by writ of possession or otherwise.

**21.9**    This assignment of rents is to be effective to create a present security interest in existing and future rents of the Property under Georgia Law.

**21.10**    No portion of the indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender.  Borrower hereby waives, to the fullest extent permitted by governmental requirements, the benefits any rights to offset under Georgia and Georgia law.

**21.11**    This Security Instrument shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code upon all OR ANY PORTION OF the Property which is or is to become "fixtures" (as that term is defined in the Uniform Commercial Code), upon being filed for record in the real estate records of the county wherein such fixtures are located, and for such purpose the following information is given:

| | |
|---|---|
| Name of Debtor: | **Living It Up LLC, a Georgia limited liability company** |
| Address of Debtor: | 5574 WINDWOOD RD<br>Atlanta GA 30349 |
| Name of Secured Party: | Capital Fund I, LLC |
| Description of the collateral: | **6782 Mancha St, Atlanta, GA, 30349** |

Description of real estate to which the collateral is attached or upon which it is or will be located and record owner of such real estate:

The real estate is described on Exhibit "A" to this Security Instrument.

Record owner of the real estate (including the name in which such real estate is held for a trust if different from the name of the debtor for purposes of a financing statement):

N/A

**22.** THIS IS A BALLOON SECURITY INSTRUMENT AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS «Loan_Amount», TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS SECURITY INSTRUMENT.

**23.** That this Security Instrument applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder of the Note secured hereby; or, if the Note has been pledged, the pledgee thereof. In this Security Instrument, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

**24.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without notice to Borrower. A sale may result in the change of the person who collects monthly payments due under the Note and this Security Instrument.

**25.** Borrower hereby waives, releases and discharges any homestead exemption claimed or declared against Property.

**26.** If any term or provision of this Security Instrument is held invalid or unenforceable by a court or arbitrator of competent jurisdiction, such terms shall be reduced or otherwise modified by such court or arbitrator to the minimum extent necessary to make it valid and enforceable. If such term or provision cannot be so modified, it shall be severed, and the remaining terms and provisions of this Security Instrument shall be interpreted in such a way as to give maximum validity and enforceability to this Security Instrument. The remaining terms and provisions hereof shall continue in full force and effect.

**27.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

Request is hereby made that a copy of any notice of default and a copy of any notice of sale hereunder be mailed to Borrower at its/his/her address hereinbefore set forth.

Borrower hereby acknowledges that the financing being provided is being provided for the acquisition/financing of the Property, more specifically described above.

In the event the Property is a single-family residence, townhouse, condominium, or mobile home plus the land upon which that mobile home is located Borrower expressly warrants and represents to Lender that the Property represents a commercial purchase/finance, for profit venture, and that Borrower will not and has no intention of occupying the Property as a primary or secondary personal residence.

**Borrower Initials**

In addition, Borrower therefore expressly covenants and warrants that it/he/she is an investor, engaged in the business of constructing, remodeling and selling dwellings and that the financing obtained from Lender was in the course of that business with the intent to construct and sell the Property to another person.

Borrower agrees and acknowledges that his/her Borrower Certificate, Declaration and the representations contained herein are a material inducement for the Lender to fund the Note; and that Borrower acknowledges that the

Loan

 **INITIALS**

Lender would not have considered funding the loan if this certification, declaration and representation was not tendered by Borrower.

Borrower understands that the Lender is providing private money for loan funds and that the Lender is a private money source, who is not operating under any guidelines of licenses, or under the supervision of any State Banking Department or other Governmental Agency. Borrower represents that it/he/she has performed its/his/her due diligence and agrees that the interest rate of the Note is the fair market rate in for this type of financing.

Borrower certifies that the loan funds provided will in no way be considered a "Consumer Loan" because Borrower is representing itself or himself or herself as a professional real estate investor.

Borrower acknowledges that it/he/she had multiple sources for the funding of the subject loan and has selected the Lender for various business and economic reasons.

THIS AGREEMENT MAY BE EXECUTED IN COUNTER-PARTS.

*[Signature page follows]*

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

Page **10** of **12**

Loan



INITIALS

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date written below.

**AGREED AND ACCEPTED 07/05/2024**

Signature: _____

Living It Up LLC, a Georgia limited liability company
BY: Marcedes Lyons, Its Member

Signed, sealed, and delivered
before the undersigned:

_____
Unofficial Witness
Name: Natalie Stringfield

_____
Notary Public
Name: Taylor L Josey

My commission expires:

[NOTARY SEAL]

TAYLOR L JOSEY
NOTARY PUBLIC
Dekalb County
State of Georgia
My Comm. Expires 012/28/2026

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS
Loan                    Page 11 of 12                    **INITIALS**

Deed Book 68126 Page 384
CHÉ ALEXANDER
Clerk of Superior Court

## EXHIBIT "A"
## REAL PROPERTY DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 156, 13th District, Fulton County, Georgia and being,,Lot 249, ~~Block~~, Heritage Park Subdivision (AKA Old National Highway), Phase Two, as per plat recorded at,,Plat Book 311, Page 62, Fulton County, Georgia Records, which plat is incorporated herein and made a part,,hereof by this reference.,,Subject to that Flood Plain Indemnification in favor of Fulton County, dated September 16, 2003, and recorded,,in Deed Book 36864, Page 208, Fulton County, Georgia Records.

DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS
Page **12** of **12**

**INITIALS**

Loan

Deed Book 68289 Page 332
Filed and Recorded 09/27/2024 06:11:00 P
2024-0235065
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9846502589
0848497841

PREPARED BY:
CAPITAL FUND I, LLC

WHEN RECORDED RETURN TO:
CAPITAL FUND I, LLC
14555 N SCOTTSDALE RD
SUITE 200
SCOTTSDALE, AZ 85254

**Loan:** ▮▮▮▮

# RE-RECORDING COVERPAGE

Document Title:    **Assignment of Deed to Secure Debt**

Assignor:          **CAPITAL FUND I, LLC**

Assignee:          **CAPITAL FUND REIT, LLC**

Recording Info:    **RECORDED 8/26/2024 AS DOC NO. 2024-0217116 Deed Book 68116 Page 176**

**THIS ASSIGNMENT IS BEING RE-RECORDED TO ADD THE FOLLOWING CORRECTIVE
VERBIAGE:**

**THIS ASSIGNEMENT IS BEING RECORDED TO CORRECT AND REPLACE THE ASSIGNMENT
RECORDED ON 8/26/2024 AS DOC NO. 2024-0217116 Deed Book 68116 Page 176 TO
CORRECT THE SECURED NOTE DATE TO 7/05/2024 INSTEAD OF 7/15/2024 REFERENCED
ON THE ASSIGNMENT.**

**RECORDING REQUESTED BY AND
WHEN RECORDED, RETURN TO**:

**Capital Fund I, LLC**
**14555 N Scottsdale Rd, Suite 200**
**Scottsdale, AZ 85254**

Loan No. ▮▮▮▮▮
Property ID No.: ▮▮▮▮▮▮▮

Deed Book 68166 Page 176
Filed and Recorded 08/26/2024 06:23:00 PM
2024-0217116
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9846502589
0848497841

## ASSIGNMENT OF DEED TO SECURE DEBT

For value received, the undersigned, CAPITAL FUND I, LLC, an Arizona limited liability company, having an address at **14555 N. Scottsdale Road, Suite 200, Scottsdale, Arizona 85254** ("Assignor"), hereby grants, assigns and transfers to CAPITAL FUND REIT, having an address of **14555 N. Scottsdale Road, Suite 200, Scottsdale, Arizona 85254** ("Assignee"), all of the undersigned's rights, title and interest due or to become due in and to that certain Deed to Secure Debt, Assignment of Leases and Rents, and Security Agreement, together with that certain Secured Note in the amount of $**250,000.00**, each dated **07/15/2024**, executed by **Living It Up LLC, a Georgia limited liability company**, ("Borrower"), in favor of Capital Fund I, LLC, which was recorded on **08/13/2024** as Instrument **2024-0207362 Deed Book 68126 Page 573** in the Recorder's Office of the County of **Fulton**, State of Georgia (the "Deed to Secure Debt"), against:

The real property located in the City of **Atlanta**, County of **Fulton**, State of Georgia, described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF,

commonly known as **6782 Mancha St, Atlanta, Georgia 30349** (the "Mortgaged Property");

Together with all of Assignor's rights, title and interest in and to the Secured Note therein described or referred to, the money due and to become due with interest, and all rights to accrue under said Deed to Secure Debt, and all Loan Documents (as defined in the Loan Agreement) executed concurrently therewith.

The undersigned Assignor has independently and contemporaneously executed that certain Allonge to Secured Note assigning and transferring to Assignee, all of the Assignor's right, title and interest in and to the Secured Note which is secured by the Deed to Secure Debt.

**[SIGNATURES FOLLOW]**

Deed Book 68186 Page 177

Deed Book 68269 Page 534

Dated: 8/26/2024

**ASSIGNOR:**

CAPITAL FUND I LLC, an Arizona limited liability company

By:_____

Name:  Noah Brocious

Title: Its President

Signed, sealed, and delivered
before the undersigned:

_____
Unofficial Witness

Name: _Adam Kehl_____

_____
Unofficial Witness

Name: _Blane  Johnson_____

_____
**NOTARY PUBLIC**

Name:_ Myshia Carter_____

My commission expires: 3/30/2027

[NOTARY SEAL]



OFFICIAL SEAL
MYSHIA CARTER
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
COMM# 646987
My Comm. Expires 3/30/2027

Deed Book 68186 Page 178
CHÉ ALEXANDER
Clerk of Superior Court

Deed Book 68269 Page 535
CHÉ ALEXANDER
Clerk of Superior Court

## Exhibit "A"

## Legal Description of Property

All that tract or parcel of land lying and being in Land Lot 156, 13th District, Fulton County, Georgia and being Lot 249, Block, Heritage Park Subdivision (AKA Old National Highway), Phase Two, as per plat recorded at Plat Book 311, Page 62, Fulton County, Georgia Records, which plat is incorporated herein and made a part hereof by this reference. Subject to that Flood Plain Indemnification in favor of Fulton County, dated September 16, 2003, and recorded in Deed Book 36864, Page 208, Fulton County, Georgia Records.

## Summary

| | |
|---|---|
| Parcel Number | 13 0156 LL3745 |
| Location Address | 6782 MANCHA ST |
| | SOUTH FULTON |
| Legal Description | |
| Property Class | R3 - Residential Lots |
| Neighborhood | 1336 |
| Tax District | 55 |
| Zoning | AG1 |
| Acres | 0.1382 |
| Homestead | N |
| Exemptions | |

View Map



13 0156  LL3745 8/15/2025

## Owner

LIVING IT UP LLC

## Most Current Owner

LIVING IT UP LLC
PO BOX 311074
ATLANTA GA 31131

Owner Info Last Updated 4/14/2025

## Land

| Description | Land Type | Land Code | Square Feet | Acres |
|---|---|---|---|---|
| PRIMARY SITE | S | 1 | 6,022 | 0.1382 |

Total Acres:
0.1382

## Residential Improvement Information

| | | | | |
|---|---|---|---|---|
| Card | 1 | Heating System | WARM AIR |
| Stories | 2 | Heat | CENTRAL WITH A/C |
| Exterior Wall | FRAME | Total Fixtures | 16 |
| Style | CONVENTIONAL | Masonry Fireplaces | 1 |
| Year Built | 2007 | Heating Fuel Type | GAS |
| Effective Age | 0 | Pre Fab Fireplace | 0 |
| Res Sq Ft | 3110 | Miscellaneous Feature | |
| Basement | NONE | Miscellaneous Feature 2 | |
| Finished Bsmt Sqft | 0 | Grade Factor | C+ 1.08 |
| Full Bath/Half Bath | 3/0 | Cost/Design Factor | 0% |
| Bedrooms | 5 | CDU | GD |
| Attic | NONE | | |
| Additional Fixtures | 7 | | |

## Sales

| Sale Date | Sale Price | Instrument | Deed Book | Deed Page | Qualification | Sales Validity | Grantee | Grantor | Recording |
|---|---|---|---|---|---|---|---|---|---|
| 5/30/2024 | $300,000 | | 68126 | 0570 | Unqualified | Sale To/From Government Agency | LIVING IT UP LLC | THE SECRETARY OF VETERANS AFFAIRS | 68126 0570 |
| 11/1/2022 | $310,985 | | 66350 | 0033 | Unqualified | Sale To/From Government Agency | SECRETARY OF VETERANS AFFAIRS | WILMINGTON SAVINGS FUND SOCIETY | 66350 0033 |
| 11/1/2022 | $310,985 | | 66334 | 0404 | Unqualified | Liquidation / Foreclosure | WILMINGTON SAVINGS FUND SOCIETY FSB | SMITH WESTON PEGGIE & LESTER | 66334 0404 |
| 5/23/2009 | $0 | | 48066 | 0158 | Unqualified | Sale < = 1000 | WESTON LESTER & | WESTON LESTER | 48066 0158 |
| 2/5/2009 | $175,000 | | 47631 | 0487 | Unqualified | Unvalidated/Deed Stamps | WESTON LESTER & | LEGACY COMMUNITIES OF HERITAGE PARK, LLC | 47631 0487 |
| 5/17/2007 | $225,000 | | 45120 | 0573 | Unqualified | Sale Includes Multiple Parcels | LEGACY COMMUNITIES OF HERITAGE PARK LLC | TAMPA INVESTMENT GROUP, INC. | 45120 0573 |

## Permits

| Date | Number | Amount | Purpose | Status | Permit Number | Type | Description |
|---|---|---|---|---|---|---|---|
| 03/02/2007 | B07-00274 | $145,040 | NR | | R | | |

## Valuation

| | 2026 | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|---|
| LUC | 101 | 101 | 101 | 101 | 101 | 101 |
| Class | R3 | R3 | R3 | R3 | R3 | R3 |
| + Land Value | $58,300 | $58,300 | $79,200 | $79,200 | $48,000 | $26,100 |
| + Building Value | $275,400 | $275,400 | $265,200 | $265,200 | $229,300 | $177,400 |
| = Total Value | $333,700 | $333,700 | $344,400 | $344,400 | $277,300 | $203,500 |
| Assessed Value | $133,480 | $133,480 | $137,760 | $137,760 | $110,920 | $81,400 |

## Photos



13 0156  LL3745 8/15/2025

## Sketches



| Room Type | Area |
|---|---|
| A Base Area | 1384 |
| B FR GR FRAME GARAGE | 300 |
| C MA_PT CONC/MAS PATIO | 120 |
| D FR GR FRAME GARAGE | 100 |
| E 1S FR ONE STORY FRAME | 64 |
| F FROVR FRAME OVERHANG | 22 |
| G FRBAY FRAME BAY | 18 |
| H FRBAY FRAME BAY | 18 |
| I STOOP STOOP | 12 |

## Appeal History

| Tax Year | Hearing Type | Subkey | Notice Date | File Date | Appeal Status |
|---|---|---|---|---|---|
| 2026 | C.O.A. Notice | 1 | 06/16/2026 | | Pending Appeal |
| 2025 | C.O.A. Notice | 1 | 06/17/2025 | | Time Elapsed |
| 2024 | C.O.A. Notice | 1 | 06/18/2024 | | Time Elapsed |
| 2023 | C.O.A. Notice | 1 | 06/09/2023 | | Time Elapsed |
| 2022 | C.O.A. Notice | 1 | 06/17/2022 | | Time Elapsed |
| 2021 | C.O.A. Notice | 1 | 06/21/2021 | | Time Elapsed |
| 2020 | C.O.A. Notice | 1 | 06/19/2020 | | Time Elapsed |
| 2019 | C.O.A. Notice | 1 | 06/18/2019 | | Time Elapsed |
| 2018 | C.O.A. Notice | 1 | 05/22/2018 | | Time Elapsed |
| 2017 | C.O.A. Notice | 2 | 08/04/2017 | | Time Elapsed |
| 2017 | C.O.A. Notice | 1 | 05/19/2017 | | Time Elapsed |
| 2016 | C.O.A. Notice | 1 | 06/10/2016 | | Time Elapsed |
| 2015 | C.O.A. Notice | 1 | 06/05/2015 | | Time Elapsed |
| 2014 | C.O.A. Notice | 1 | 06/06/2014 | | Time Elapsed |
| 2013 | C.O.A. Notice | 1 | 06/15/2013 | | Time Elapsed |
| 2012 | C.O.A. Notice | 1 | 05/14/2012 | | Time Elapsed |
| 2011 | C.O.A. Notice | 1 | 05/07/2011 | | Time Elapsed |
| 2010 | C.O.A. Notice | 1 | 03/15/2010 | | Time Elapsed |
| 2009 | C.O.A. Notice | 1 | 06/27/2009 | | Time Elapsed |
| 2008 | C.O.A. Notice | 1 | 04/30/2008 | | Time Elapsed |
| 2007 | C.O.A. Notice | 1 | 04/30/2007 | | Time Elapsed |

## Notices

| Tax Year | Hearing Type | Subkey | Notice Type | Date |
|---|---|---|---|---|
| 2025 | C.O.A. Notice | 1 | Posted to Courthouse | 05/08/2026 |

No data available for the following modules: Comp Search (Commercial), Comp Search (Vacant), Summary - Personal Property, Commercial Improvement Information, Accessory Information, Appraised Values - Personal Property, Hearings.

The Fulton County Board of Assessors makes every effort to produce the most accurate information possible. No warranties expressed or implied are provided for the data herein, its use or interpretation. The assessment information is from the last certified tax roll. All other data is subject to change.

Contact Us

| User Privacy Policy | GDPR Privacy Notice
Last Data Upload: 7/8/2026, 12:16:55 PM

PT-306 (revise



FULTON COUNTY BOARD OF ASSESSORS
235 Peachtree St. NE, Suite 1400
Atlanta, GA 30303
(404) 612-6440

LIVING IT UP LLC
PO BOX 311074
ATLANTA GA 31131

## 2026 Notice of Assessment

**Date Notice Mailed:** 06/16/2026

**Appeal Deadline:** 07/31/2026

Appeals, homestead applications, or
other specialized assessment applications must be
filed within 45 days from the Date Notice Mailed

***You are required by law to notify
the Fulton County Board of Assessors
if you become ineligible for any homestead exemption listed in
this notice and subject to penalties for failing to do so.***

### Rights to Appeal and Apply for Homestead Exemption

You have the right to appeal the property values provided in this notice. You may also apply for homestead exemptions if your property was owned and occupied as your family's primary residence and homestead as of January 1 of 2026. If you wish to appeal your 2026 property value or apply for homestead exemptions, you must do so in writing no later than 45 days after the date of this notice. If you do not file an appeal or apply for homestead exemption by this date, your right to do so for this year will be lost.

For further information on filing appeals, applying for homestead exemptions, or reporting your ineligibility for a homestead exemption, visit or contact

**For Appeals:**    Fulton County Board of Assessors,  235 Peachtree St. NE, Suite 1200, Atlanta, GA 30303, 404-612-6440,
https://fultonassessor.org/property-appeals/

**For Homestead Exemptions:**    Fulton County Board of Assessors,  235 Peachtree St. NE, Suite 1100, Atlanta, GA, 30303, 404-612-6440,
https://fultonassessor.org/exemptions/

**Board of Equalization**: Appealing value, uniformity, exemptions, or taxability.

**Nonbinding Arbitration**: Appealing value only. Requires a certified appraisal.

**Hearing Officer**: Appealing value or uniformity. For a parcel of non-homestead real property with a fair market value of more than $500,000; one or more accounts of wireless personal property with an aggregate fair market value of more than $500,000; or one or more accounts of personal property other than wireless property with an aggregate fair market value of more than $200,000.

**Superior Court**: Requires a written agreement with the county board of tax assessors.

**To file an appeal with the Fulton County Board of Assessors or for more information regarding reasons for any assessment change or the appeals process,  contact William Ruffin at 404-612-6440. All documents and records used to determine the 2026 Value are available upon request from the Fulton County Board of Assessors and must be provided within 10 business days of such request.**

| Account Number | Property Identification Number | Total Acreage | Tax District |
|---|---|---|---|
|  | 13 -0156-  LL-374-5 | .14 | SOUTH FULTON |

| Property Description | R1  - Residential  Improvement | NBHD - 1336 |
|---|---|---|
| Physical Property Address | 6782 MANCHA ST | |

| | 2025 Value | 2026 Value | 2026 Other Value * |
|---|---|---|---|
| 100% Fair Market Value | 333,700 | 333,700 | |

**Please note**: Tax rates for counties, school districts, and cities will be established by each local government later this year. If a local government intends to increase revenue on existing properties, they must advertise and hold three public meetings to do so.

* 2026 Other Value reflects the fair market value of any preferential assessment for properties or any portion of properties meeting certain requirements.

### Taxable Assessed Value Changes Since 2025

Annual Notice-No Change In Fair MarketValue

### 2026 Exemptions, Credits, and Preferential Assessments **

### Estimated Tax Savings

** The estimated tax savings under the 2026 Exemptions, Credits, and Preferential Assessments is determined by totaling the dollar value of any exemptions, credits, or preferential assessments applied to your property for 2026 using the 2025 millage rates for taxing authorities and types. All 2026 exemptions, credits, or preferential assessments listed include all taxing authorities, and such estimate may not reflect the total savings provided on the 2026 tax bill.

You may file an appeal online by visiting the Fulton County Board of Assessors' Online Services portal https://fultonassessor.org/online-services/

**\*\*\*THIS IS NOT A BILL - DO NOT SEND PAYMENT\*\*\***